2022 IL App (2d) 210305-U
No. 2-21-0305
Order filed July 20, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Kane County. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 18-CM-2870 |
| | ) | |
| CURTIS BOOTHE, | ) | Honorable |
| | ) | Keith A. Johnson, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Birkett and Brennan concurred in the judgment.

**ORDER**

¶ 1     *Held*:   (1) We have jurisdiction over the State's appeal, as the trial court's exclusion of the complaining witness's cell-phone audio recordings had the effect of suppressing evidence. (2) The trial court's exclusion of audio recordings, disclosed to defendant less than two business days before trial, was not an abuse of discretion.

¶ 2     The State appeals the trial court's discovery-sanction order that barred from evidence audio recordings from the complaining witness's cell phone. The State contends that (1) no discovery violation occurred, because it was not required to produce the recordings; and (2) if there was a discovery violation, the exclusion sanction was unduly harsh because defendant had ample time to review the relatively short recordings before the scheduled trial, or the court could have granted

a short continuance. Though the State frames it differently, the ultimate issue presented in this appeal is whether the court abused its discretion in barring the late-tendered audio recordings. Because we find no abuse of discretion, we affirm the trial court's judgment.

¶ 3                                    I. BACKGROUND

¶ 4      On October 28, 2018, the State charged defendant, Curtis Boothe, with two counts of domestic battery (720 ILCS 5/12-3.2(a)(1), (a)(2) (West 2018)), Class A misdemeanors, arising from an altercation with the complaining witness. Defendant was released on bond, and, on October 30, 2018, he filed a discovery motion and a speedy trial demand. In response to the discovery motion, the State tendered copies of police reports and an incomplete recording of the complaining witness's 911 call. The police reports, which are not in the appellate record, apparently indicated that the complaining witness made with her cell phone two audio recordings of the moments leading up to and including the altercation.

¶ 5      The matter was continued by agreement on several occasions until December 15, 2020. On that date, defendant reasserted his speedy trial demand and objected to any further continuances. The written order entered after the hearing stated, "Discovery issues *** are considered either waived, withdrawn[,] or otherwise resolved by the setting of the matter for trial[.]" The trial court set the trial date for February 25, 2021.[1] On that date, the court noted that, due to the COVID-19

---

[1]At the time, due to the COVID-19 pandemic, an administrative order provided that trials were to commence at 1:30 p.m. on Thursdays, with jury selection to begin the following Monday, Tuesday, or Wednesday. *In re COVID-19 Criminal Jury Trial Procedures*, Kane County Cir. Ct. Crim. Div. Admin. Order (eff. July 1, 2020), https://cic.countyofkane.org/Admin%20Orders/ Criminal%20Division/Criminal%20Jury%20Trial%20Procedures%20Amended%E2%80%8B%

pandemic, it was not holding jury trials. The court rescheduled the trial for April 29, 2021. On that date, the State acknowledged that, due to its lack of diligence, it had failed to subpoena the complaining witness and requested a continuance because the complaining witness had family obligations and was not certain she could appear. The court denied the State's request. The State then told the court it was ready for trial, notwithstanding its failure to subpoena the complaining witness and her potential inability to appear. The court noted that it could not find the case ready for trial because the complaining witness was not under subpoena. Defendant moved to dismiss based on the State's lack of diligence. The court denied the motion and rescheduled the trial for May 13, 2021. See 725 ILCS 5/114-4(e) (West 2020).

¶ 6    On May 13, 2021, both parties answered ready. The State moved to admit the 911 recording that it had previously tendered. The State informed the court that the recording was incomplete and that the Aurora Police Department reported that it had no additional 911 recordings. As a discovery sanction, the court barred the State from using the 911 recording. The State represented that discovery was otherwise complete, and the court continued the trial to May 17, 2021. Though both parties again answered ready, the trial did not proceed, because of pandemic restrictions.

_____

20eff.%207-1-2020.pdf. On those Thursdays, the trial court was required to determine whether the case was ready for trial, by determining in part whether nonprofessional (as opposed to professional witness, *i.e.* police officers, lab personnel, medical personnel, etc.), material witnesses had been subpoenaed. If the court determined the case was ready, it would notify the presiding judge of the criminal division, who would evaluate and prioritize the ready cases and devise a trial schedule for the following Monday, Tuesday, and Wednesday.

Thus, the case was continued to June 3, 2021, for trial, and the court again entered a written order stating that any discovery issues were considered waived, withdrawn, or resolved.

¶ 7    In the meantime, on May 26, 2021, defendant filed another motion to dismiss, this time on speedy trial grounds.

¶ 8    In the afternoon on June 2, 2021, the complaining witness emailed to the State the cell phone audio recordings that were referenced in the earlier-tendered police report. On June 3, 2021, the parties appeared and presented argument on defendant's speedy trial motion. Because the pandemic necessitated the delay, the court denied the motion.

¶ 9    The parties answered ready for trial. Defendant, however, also orally moved to exclude the audio recordings, noting the State had tendered them "during the lunch hour." The State asserted it had not previously received the recordings and had not been able to listen to them until the morning of June 3. According to the State, the first recording was about 90 seconds long and consisted of an argument between defendant and the complaining witness. The second recording was about nine minutes long and consisted of more argument between them. The State asserted that, in the last "couple of seconds" of the longer recording was "when the defendant allegedly grab[bed] the phone out of the complaining witness's hand[,] which [wa]s the underlying nature of the domestic battery."

¶ 10    Defense counsel said that he had listened to the recordings but had not "had a chance to think about *** how [he] would want to use them." His "main concern" was "the late nature of these being turned over, especially *** when they[ were] mentioned in the police report and when [he] asked the State for them on January 1st of 2020, 17 months ago."

¶ 11    The State clarified that the only portion it intended to use at trial was the "last five seconds where there is a shuffling on the phone where the defendant allegedly grabs the phone out of [the

complaining witness's] hand." The State asserted it turned over the recordings as soon as it received them as part of its ongoing discovery obligations.

¶ 12    The trial court agreed that the State was not at fault for the late disclosure but nevertheless barred the recordings. On the State's motion, the court continued the case to June 7, 2021, for trial.

¶ 13    On June 4, 2021, the State orally moved to reconsider. The State argued its late disclosure of the recordings did not amount to a discovery violation, because the late disclosure was not caused by its willful actions. It did not conceal the recordings, which were mentioned in the police report. Further, the State had twice requested the recordings from the police, who each time replied that no such items were in evidence. Moreover, the recordings were in the possession of the complaining witness, and it forwarded the recordings to the defense "almost instantly" after it received them. The State also asked the court to reconsider the sanction imposed. It noted the longer recording was just nine minutes long, the State intended to introduce only about a 15- to 30-second portion of that recording, and, therefore, the defense had adequate review time before trial began on June 7, 2021, *i.e.*, the second business day after its disclosure. If that time were deemed inadequate, the court could grant a continuance.

¶ 14    Before allowing defense counsel to respond, the court asked, "doesn't discovery have to be closed at some point?" *** [D]on't we have to draw a line in the sand at some point where we say[,] okay, discovery is complete, it's done[?]" The State responded that applicable case law did not require barring evidence in such circumstances, unless the late disclosure was willful or made in bad faith.

¶ 15    Defense counsel responded that, although the State did not act in bad faith, it had a duty to attempt to obtain the recordings from the complaining witness, particularly because they were referenced in the police reports tendered in discovery. According to the defense, the State could

have asked the complaining witness whether she had the recordings but failed to do so. Nor did the State ever tell counsel it had requested the recordings from the police, who responded they did not have them. Counsel reiterated he had specifically requested the recordings and assumed they did not exist because they were never tendered. Their late disclosure was a surprise, hoisted on the defense on the eve of trial, which required an adjustment in its strategy. Counsel contended that a continuance would not be a sufficient remedy, because (1) the case was already more than two years old and (2) the State should not force defendant to choose between having time for an adequate review of discovery and his right to a speedy trial.

¶ 16    The trial court denied the motion to reconsider. The court noted that its trial-setting orders contained language stating that discovery issues are considered waived, withdrawn, or resolved by the setting of the matter for trial, which it interpreted to mean that discovery should be completed as of that date, subject to limited exceptions, such as *Brady* material. In fact, it found discovery should be closed when a matter is set for trial. The court also noted that the State had thrice answered ready for trial without the recordings and had previously stipulated it was not diligent by failing to subpoena its complaining witness. The court agreed with the parties that the State did not act in bad faith and attempted to obtain the recordings from the police. However, when the police responded they did not have the recordings, the State, if it wanted to use the recordings, should have "done the next thing of going to the complaining witness" and asking for them, especially since the complaining witness was apparently cooperative and had been in court when the State answered ready. Further, the court noted, defendant had asserted his speedy-trial rights and commented that it would not be fair, under the circumstances, to continue the trial yet again over that demand. The court also disagreed with the State's position that, as long as it discloses

evidence as soon as it receives it, it could be used, because, again, discovery has to be completed at some point. The State filed a certificate of impairment and a notice of appeal.

¶ 17                                   II. ANALYSIS

¶ 18                                   A. Jurisdiction

¶ 19     Preliminarily, defendant contends that we lack jurisdiction because the trial court's imposition of a discovery sanction did not amount to the suppression of evidence. The State may appeal in only certain limited circumstances in a criminal case. The State may appeal "from an order or judgment the substantive effect of which results in *** suppressing evidence." Ill. S. Ct. R. 604(a)(1) (eff. July 1, 2017). Defendant argues that the recordings would have had "little to no impact on the State's ability to prosecute the case," given that the State had previously declared itself ready for trial without the recordings. Also, the court's ruling did not prevent the evidence from being heard by the jury, as the State could adduce the same information directly from the complaining witness.

¶ 20     Under Rule 604(a)(1), the State may appeal a suppression order "where the State certifies that the suppression substantially impairs the State's ability to prosecute the case." *In re K.E.F.*, 235 Ill. 2d 530, 537 (2009). Evidence is "suppressed" within the meaning of Rule 604(a)(1) when the trial court's order "prevents [the] information from being presented to the fact finder." *People v. Drum,* 194 Ill. 2d 485, 492 (2000). We have found jurisdiction under Rule 604(a)(1) to review an order barring evidence as a discovery sanction in nearly identical circumstances. See *People v. Rubino*, 305 Ill. App. 3d 85, 87 (1999).

¶ 21     Defendant cites *K.E.F.*, which is distinguishable. There, the State, for reasons that "def[ied] comprehension," attempted to introduce a witness's prior statement without questioning the witness about the substance of that statement. *K.E.F.*, 235 Ill. 2d at 539. When the trial court

refused to permit this, the State attempted to take an interlocutory appeal under Rule 604(a)(1). The supreme court, however, dismissed the appeal, finding the trial court did not "suppress" the evidence but merely required the State to comply with the statutory requirements for admission. *Id.* at 540; see 725 ILCS 5/115-10(b)(1) (West 2018). The court noted that "admissibility of the evidence in question was a matter entirely within the State's control." *K.E.F.*, 235 Ill. 2d at 540. Thus, "the sole impact of the circuit court's order is on the *means* by which the information is to be presented. That is not suppression of evidence." (Emphasis in original.) *Id.* The court distinguished *Drum*, where the trial court's order completely barred the prosecution from introducing the witnesses' prior testimony. *K.E.F.*, 235 Ill. 2d at 538-40.

¶ 22    *K.E.F.* relied on *People v. Truitt*, 175 Ill. 2d 148 (1997). In *Truitt*, the State attempted to avail itself of a statute purporting to authorize the admission of chemical test results through a written report without the need to call the chemist who conducted the test. *Id.* at 149 (citing 725 ILCS 5/115-15 (West 1994)). The trial court declared the statute unconstitutional and required the chemist to testify for admission of the report. *Id.* at 150. The supreme court dismissed the State's Rule 604(a)(1) appeal, holding that the trial court did not "suppress" the evidence but merely required the State to call the chemist who performed the test to secure its admission. *Id.* at 152-53.

¶ 23    In *Drum*, by contrast, the trial court completely barred two witnesses' prior testimony. *Drum*, 194 Ill. 2d at 487. The supreme court concluded that the order's substantive effect was to bar the use of that testimony, regardless of whether the order was characterized as " 'excluding' " or " 'suppressing' " the testimony. *Id.* at 491.

¶ 24    Defendant argues that *K.E.F.* and *Truitt* stand for the proposition that the State may not appeal under Rule 604(a)(1) if it could present the same information to the jury in some other way. Defendant asserts that, as in *K.E.F.*, the State "had the option of presenting live testimony to secure

the admission of the information it sought to introduce" (*K.E.F.*, 235 Ill. 2d at 540). But in *K.E.F.* and *Truitt*, the live testimony would have allowed the State to introduce the precise evidence it wanted: the witness's prior statement in *K.E.F.* and the chemist's report in *Truitt*. In other words, both the live testimony and the underlying evidence would have been admissible. In neither case would the live testimony have been *in lieu of* the underlying evidence. The present case is more like *Drum*: the court's ruling meant that no amount of live testimony would secure the admission of the recordings. What matters is that the State was barred from presenting the recordings themselves; it is irrelevant that the State could have presented the recordings' substance through some other evidentiary source. Thus, the order was appealable under Rule 604(a).

¶ 25    Defendant further argues that "the State's readiness to proceed to trial without the recordings on three occasions fatally undermines the State's position" and "that the trial court's decision to bar the recordings 'substantially impairs the People from further successful prosecution' of this case." However, we must decline defendant's invitation to evaluate the State's representations in its certificate of impairment. As our supreme court has explained:

> " 'Our intention in requiring this certification is not to formulate a standard by which courts may determine the appealability of a particular order. *** [T]hat would indeed be a heavy burden, one which we do not believe justified by the marginal diminution in the number of appeals which we anticipate such a procedure would produce. Instead, we rely solely upon the good-faith evaluation by the prosecutor of the impact of the suppression order on his [or her] case.' " *People v. Keith*, 148 Ill. 2d 32, 39-40 (1992) (quoting *People v. Young,* 82 Ill. 2d 234, 247 (1984)).

¶ 26    Even if we could create an exception to this rule, we are unpersuaded that the admittedly unique facts of this case warrant it. To "impair" means "to damage or make worse." Merriam-

Webster's Collegiate Dictionary 580 (10th ed. 2001). Thus, the exclusion need only damage the State's case, not destroy it completely. It is entirely consistent for the State to have been ready to proceed to trial without the recordings and yet, upon reviewing them, contend that excluding them would damage its case (which defendant implicitly acknowledged by moving to exclude them).

¶ 27        B. The Order Excluding the Recordings Was Not An Abuse of Discretion

¶ 28    The State contends that the trial court erred by barring the recordings from evidence, where the State did not commit a discovery violation. The State maintains that, because defendant was charged with a misdemeanor, he was entitled to only limited discovery, which did not encompass the recordings at issue. See *People v. Kladis*, 2011 IL 110920; *People v. Schmidt*, 56 Ill. 2d 572 (1974). Further, even if the recordings were otherwise discoverable, the State contends that it had no obligation to turn over material not in its possession or control.

¶ 29    We need not decide whether the recordings were discoverable under *Kladis* and *Schmidt*, because, here, the State treated this material as if it were discoverable when it tendered the recordings to the defense. And we need not decide whether the State's late disclosure or purported lack of diligence in obtaining the recordings was a discovery violation. Here, because we may affirm on a different basis: the trial court's order barring the evidence was a proper exercise of its inherent discretion to control the proceedings and to ensure defendant's right to a fair trial. See *People v. Greco*, 204 Ill. 2d 400, 414 (2003) (appellate court may affirm on any basis supported by the record).

¶ 30    It is well settled that "[a] trial court has the inherent authority to control its docket and to prevent undue delays in the disposition of cases caused by a party's abuse of the procedural rules." *People v. Leon*, 306 Ill. App. 3d 707, 715-16 (1999). An abuse of the rules need not necessarily be willful or intentional. See *People v. Heinzmann*, 232 Ill. App. 3d 557, 560-61 (1992). The court's

authority includes the power to impose sanctions, including the dismissal of the case, to ensure that a defendant obtains a fair trial and to compel compliance with its discovery orders. *Leon*, 306 Ill. App. 3d at 716. Because an order imposing a sanction is a matter of the trial court's discretion, we review the court's order for an abuse of that discretion. An abuse of discretion occurs when no reasonable person would take the court's position. *People v. Guerrero*, 2021 IL App (2d) 190364, ¶ 62.

¶ 31    We conclude the trial court did not abuse its discretion by barring the State from using the audio recordings. The record shows that the audio recordings were referenced in the police reports that were tendered in discovery, and, in January 2020, the defense specifically requested those recordings from the State. In response to that request, the State inquired with the police and was twice told that they did not have the recordings in their possession but never told the defense. The State took no other action to obtain the recordings, such as the minimal step of contacting an apparently cooperative witness who had twice been in court when the State answered ready, and proceeded for the next 17 months as if the recordings did not exist and were not vital to its case. Indeed, on three occasions, the State answered ready for trial before knowing the recordings were even available.

¶ 32    Further, the record shows that, on December 15, 2020, and twice thereafter, the court entered a written order that stated, "Discovery issues *** are considered either waived, withdrawn[,] or otherwise resolved." We agree with the trial court's assessment that, though perhaps inartfully drafted, this provision meant that discovery had been completed, and we agree with its sentiment that, at some point, discovery must be closed except in compelling circumstances, such as the disclosure of *Brady* material. This was consistent with the State's representation, at the May 13, 2021, hearing, that discovery was complete.

¶ 33    Moreover, this relatively simple misdemeanor case (the parties intended to present the testimony of only four or five different witnesses) had been pending for more than 31 months (albeit during the COVID-19 pandemic). During the last six months of that time, defendant had consistently asserted his speedy-trial rights and answered ready for trial, and the State's lack of diligence directly caused some of that delay.

¶ 34    Additionally, defendant had lost his job and some property as a result of the delays in the case and his bond conditions. He was understandably suffering anxiety from having this case hanging over his head. To be sure, defendant could have requested a continuance when the State tendered this evidence, literally on the eve of trial for which he had been ready for almost six months. However, we, like the trial court, do not believe defendant was required to further compromise his speedy-trial rights so that he could do so.

¶ 35    Nor can we agree with the State's position that defendant did not need any additional time to review the recordings and adjust his trial strategy. The State failed to include the recordings in the record on appeal, and we are therefore unable to assess them, notwithstanding the State's representation to the trial court that "everything in that recording is verbatim in the witness's written statement." Any doubts arising from the incompleteness of the record must be resolved against the State. *Leon*, 306 Ill. App. 3d at 714.

¶ 36    Under the unique circumstances of this case, we conclude the trial court did not abuse its inherent discretion to control its docket by excluding the audio recordings at issue. In reaching this conclusion, we note it is consistent with the purpose of discovery, which is to ensure a fair trial by eliminating surprise (see *e.g.*, *People v. Sutton*, 349 Ill. App. 3d 608, 618-19 (2004)), and we emphasize that the trial court, and not the parties, is in control of the docket and may, under circumstances like those present here, exclude evidence to ensure a defendant receives a fair and

speedy trial. *Leon*, 306 Ill. App. 3d at 716. Here, the trial court conscientiously considered the circumstances and determined the defendant should not have been required to compromise his speedy-trial rights in favor of the opportunity to review late-disclosed evidence and adding further delay to an already-stale case. In light of this record, we cannot say that determination was unreasonable. *Guerrero*, 2021 IL App (2d) 190364, ¶ 62.

¶ 37                                          III. CONCLUSION

¶ 38     For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 39     Affirmed.